UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **MARY HANDORF, on behalf of herself, and all others similarly situated,** </br></br>*Plaintiffs,*</br></br>vs.</br></br>**UNITED SPECIALTY INSURANCE COMPANY,**</br></br>*Defendant.* | Case No. _____ </br></br></br></br></br></br></br></br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Comes now, Mary Handorf, on behalf of herself, and all others similarly situated ("Plaintiffs"), by and through the undersigned counsel, and files this Class Action Complaint against United Specialty Insurance Company ("Defendant" or "USIC") and alleges as follows:

### INTRODUCTION

1. This is a class action whereby Plaintiff, on behalf of herself and others similarly situated, seeks a judgment that Defendant breached its contract by failing to reimburse or refund Plaintiff for the loss of use of ski passes insured by Defendant.

2. Plaintiff, and proposed class members, purchased insurance from Defendant to protect against the risk of not being able to use purchased ski passes. The insurance policy expressly provides coverage for Plaintiff and proposed class members who were not able to use the ski passes due to a covered peril, and represents that it would refund Plaintiff for the cost of their ski pass minus the applicable daily rate or pro-rata reduction for each day that Plaintiff used their ski pass during the 2019/2020 ski season.

3. Defendant is in material breach of the policy by failing to refund Plaintiff and

1

proposed class members who were unable to use their ski passes for reasons related to the COVID-19 pandemic.

4. Defendant has caused material harm to Plaintiff and proposed class members by improperly failing to make payment.

5. Plaintiff brings this action on behalf of herself and all other similarly situated individuals. Plaintiffs seek to recover compensatory damages as well as declaratory and injunctive relief.

## PARTIES

6. Plaintiff Mary Handorf is a citizen of the United States domiciled in Rhodes, Iowa in Marshall County. Mary Handorf purchased a policy from Defendant in the 2019-2020 ski season for ski pass insurance.

7. Defendant USIC is a property casualty insurance company incorporated under the laws of the State of Delaware with its principal place of business in the State of Texas at 1900 L Don Dodson Drive, Bedford, Texas 76021.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

9. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within Iowa such that Defendant has significant, continuous, and pervasive contacts with the State of Iowa. Moreover, Defendant marketed, sold, and collected premiums in relation to Plaintiff's insurance policy at issue here, in the state of Iowa.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

## CLASS ACTION ALLEGATIONS

11. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of herself and all others similarly situated, and seeks to represent the following class:

> All persons who purchased both an Epic Pass for the 2019/2020 ski season and purchased from Defendant pass insurance on their Epic Pass that have not been refunded or reimbursed for the loss of use of their passes after the resorts closed on March 15, 2020 due to no fault of their own.

12. Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiffs' counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

13. Plaintiffs' claims satisfy the numerosity, typicality, adequacy, commonality and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

14. Upon information and belief, Defendant sold thousands of insurance policies for Epic Pass holders, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable.

15. Class members are readily ascertainable from information and records in Defendant's possession, custody, or control. Notice of this action can readily be provided to the class.

16.     There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The questions of law and fact arising from Defendant's actions that are common to the class include, without limitation:

A. Whether governmental orders applicable to class members were an "unforeseen event, occurrence, or circumstance" that constituted a quarantine by restraining class members from traveling to Destination Resorts[1], engaging in activities, and using the Epic Pass for its intended purpose;

B. Whether the order and directive from the CEO for Vail Resorts closing all its resorts in the United States constituted a quarantine under the terms of the Policy because it was "an unforeseen event, occurrence, or circumstance" that restrained class-members from entering upon and using the facilities of Destination Resorts for the purposes of preventing the spread of COVID-19;

C. Whether COVID-19 resulted in a "quarantine" defined by Merriam-Webster as "a restraint upon the activities of persons designed to prevent the spread of a disease";

D. Whether stay-at-home orders, or other orders restricting all non-essential travel, triggered the quarantine coverage set forth the Policy;

E. Whether the Defendant breached the terms of the Class Policies;

F. Whether the class sustained damages as a result of Defendant's breaches of contract;

G. Whether the class is entitled to damages, restitution, and/or other equitable relief; and

H. Whether the class, or a subset of the class, is entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

17.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

---

[1] The Class Policy defines a "Destination Resort" as the "ski resort where you expected to use your Season Ski Pass." (Policy at 1).

18. Plaintiff's claims are typical of the claims of the class in that Plaintiff and the class members all purchased ski pass insurance policies containing the same or similar terms including, in particular, what constitutes a Covered Peril.

19. Plaintiff will fairly and adequately protect and represent the interests of the proposed class, because his interests are aligned with, and not antagonistic to, those of the proposed class, and she is represented by counsel who are experienced and competent in the prosecution of class action litigation, and have particular expertise with class action litigation on behalf of purchasers of insurance policies.

20. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the class to bring a separate action. Because of the relatively small size of individual class members' claims, absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

**FACTUAL BACKGROUND**

**Introduction**

21. Defendant USIC provides season ski pass insurance coverage whereby it promises its insureds coverage against loss of use of the insured's season ski pass.

22. Upon information and belief, Defendant USIC provides this insurance service to customers of Vail Corporation d/b/a Vail Resorts Management Company ("Vail Resorts"), a North American company that operates more than 34 ski resorts throughout the United States. Vail

Resorts sells "Epic Passes" directly to consumers promising access to skiing and snowboarding at its resorts. Customers can purchase annual, weekly, or daily Epic Passes in advance.

23.     Vail Resorts offered Epic Pass insurance through Defendant USIC for customers that wished to mitigate the risk that they may be unable to realize the full use of their Epic Pass for reasons outside of their control. Upon information and belief, thousands of customers purchased optional pass insurance through USIC.

24.     Prior to the 2019/2020 ski season, Class Plaintiff Mary Handorf purchased three (3) Epic Passes and Epic Pass insurance through Defendant. Plaintiff purchased the Epic Passes with the understanding that she and her children would be able to access Vail Resorts for the entire ski season. To ensure she would be able to get a refund if she was unable to use the pass, Mrs. Handorf opted to pay an additional fee for pass insurance.

25.     On March 15, 2020, Vail Resorts announced that it was closing all of its mountain resorts indefinitely. On March 17, 2020, Vail Resorts announced that its "North American resorts and retail stores will remain closed for the 2019-20 winter ski season."[2] Rob Katz, chairman and chief executive officer of Vail Resorts, explained the company was ending the skiing season early due to the "fast-moving, constantly developing situation "involving COVID-19. *Id.*

26.     The COVID-19 outbreak has devastated millions of residents across the country. Given the seriousness of the spread across the nation, the Governor of Iowa and the President of the United States issued various orders limiting human contact and restricting travel and activities to only those considered essential. Skiing and snowboarding are considered non-essential activities.

---

[2] http://investors.vailresorts.com/news-releases/news-release-details/vail-resorts-close-north-american-resorts-2019-20-ski-season (last accessed October 16, 2020).

27. As a result of the closures and quarantine related restrictions, Plaintiff was restrained from entering upon and using the facilities of any of the Vail Resort properties and deprived of the use of her Epic Pass.

28. Plaintiff promptly provided notice and made a claim to American Claims Management, Inc. ("ACM"), the third-party claims administrator for the pass insurance program. Any documentation requested was provided to ACM within 90 days after the Covered Loss occurred.

29. On May 7, 2020, ACM sent a letter to Plaintiff informing her Defendant USIC was denying coverage under the terms of the Policy. **Exhibit 1**. To date, Plaintiff has not been paid under the Policy.

30. Plaintiff purchased insurance from Defendant to protect against the risk of not being able to use the ski passes. A true and accurate copy of the Certificate of Season Ski Pass Insurance ("Certificate" or "Policy") is attached hereto as **Exhibit 2** and is incorporated herein by reference.

31. The terms of the Policy were not subject to individual negotiation, and upon information and belief are materially the same for all policy owners. Given this substantially similar or identical nature of the policy, it is referred to here as a "Class Policy."

32. Plaintiffs are the owners of a Class Policy, which was in force at the time of the alleged loss.

33. Defendant is the liable insurer under the Class Policy.

**Terms of the Policy**

34. The Policy and Class Policy offers the following coverage:

> **PROPERTY INSURED AND COVERAGE LIMITS**:
> We cover the Season Ski Pass Cost you paid. We cover you against the risk of not being able to use your Season Ski Pass due to a covered peril. We will reimburse you for the Season Ski Pass Cost minus the applicable Daily Rate or Pro- Rata

7

reduction (for the Epic Day Pass) for each day (or portion thereof) that you have used your Season Ski Pass during the Ski/Snowboard Season.

35. The Policy and Class Policy defines a "Covered Peril" as follows:

**PERILS INSURED AGAINST**: Subject to the Exclusions and Coverage Limits, the Insured has coverage against Loss of use of your Season Ski Pass if caused by any one of the following unforeseen perils occurring after the effective date of coverage:
a)  Sickness, Injury or death of you or a family member;
b)  You have a Pregnancy or Childbirth verified by medical records; coverage is included for pregnant Season Ski Pass Holder's spouse of domestic partner and minor child;
c)  Your primary residence being made Uninhabitable by Natural Disaster;
d)  The Destination Resort closes indefinitely due to a Natural Disaster;
e)  You are subpoenaed, required to serve on a jury, hijacked, **quarantined** or your travel visa is denied; (perils f – j omitted) (emphasis added)

36. The Policy does contain a definition section, but the Policy fails to define "quarantined." A quarantine is generally defined as "to isolate from normal relations or communication."[3] The Code of Federal Regulations defines "quarantine" to mean "the separation of an individual or group reasonably believed to have been exposed to a quarantinable communicable disease, but who are not yet ill, from others who have not been so exposed, to prevent the possible spread of the quarantinable communicable disease."[4]

37. Plaintiff and the class members were quarantined and thus unable to use the Ski Passes they had purchased.

38. The Policy contains no applicable exclusions for viruses, pandemics, related government orders or actions taken by Vail Resorts, independently or pursuant to such government orders.

---

[3] https://www.merriam-webster.com/dictionary/quarantine (last accessed October 16, 2020).
[4] https://ecfr.io/Title-42/Section-70.1 (last accessed October 16, 2020).

39. The Policy defines a Loss as follows:

**LOSS**: Means your inability to use your season Ski Pass due to an unforeseen event, occurrence or circumstance.

## Count I: Breach of Contract

40. The preceding paragraphs are incorporated by reference herein.

41. Plaintiff and the proposed class members purchased ski pass insurance from Defendant.

42. The Policy and Class Policies are valid and enforceable contracts between the Defendant and Plaintiff and proposed class members.

43. Plaintiff and the proposed class members performed or substantially performed their obligations pursuant to the terms of the Policy and Class Policies.

44. Plaintiff and the proposed class members suffered a Loss from a Covered Peril as they are defined under the Policy and Class Policies' terms and conditions.

45. Defendant has failed to compensate Plaintiff and proposed class members for their respective Losses as required by the Policy and Class Policies in breach of the Policy and Class Policies.

46. As a direct and proximate result of Defendant's breaches, Plaintiff and the proposed class members have suffered damages that are continuing in nature in an amount to be determined at trial.

## Count II: Declaratory and Injunctive Relief

47. The preceding paragraphs are incorporated by reference herein.

48. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policy and Class Policies.

49. Plaintiff contends that Defendant has breached the Policy and Class Policies by failing to timely pay Class Members for their respective Losses by reimbursing each member of the class for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that the member has used his/her Season Ski Pass during the Ski/Snowboard Season.

50. Plaintiff, therefore, seeks a declaration of the parties' respective rights and duties under the Policy and Class Policies and requests the Court to declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy and Class Policies so that future controversies may be avoided.

51. Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy and Class Policies; and (2) ordering Defendant to comply with the terms of the Policy and Class Policies including payment of all amounts due.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

(a) That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b) For a judgment against Defendant for the causes of action alleged against it;

(c) For compensatory damages in an amount to be proven at trial;

(d) For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy and Class Policies;

(e) For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy and Class Policies;

(f) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(g) For Plaintiffs' attorney's fees;

(h) For Plaintiffs' costs incurred; and

(i) For such other relief in law or equity as the Court deems just and proper.

SIMMONS PERRINE MOYER BERGMAN PLC

/s/ *Jacob W. Nelson*
Jacob W. Nelson, AT0010431
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street, S.E., Suite 1200
Cedar Rapids, IA 52401-1266
Phone: (319) 366-7641
Fax: (319) 366-1917
jnelson@spmblaw.com

Jeffrey L. Raizner, TX Bar No. 00784806 (*pro hac vice* forthcoming)
Ben Wickert, TX Bar No. 24066290 (*pro hac vice* forthcoming)
RAIZNER SLANIA LLP
efile@raiznerlaw.com
2402 Dunlavy Street
Houston, Texas 77006
Phone: (713) 554-9099
Fax: (713) 554-9098

***Attorneys for Plaintiffs***